# IN THE SUPREME COURT OF IOWA

No. 19–0241

Submitted February 17, 2021—Filed May 28, 2021
Amended August 3, 2021

**NCJC, INC.,**

    Appellee,

vs.

**WMG, L.C.,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Kossuth County, Carl J. Petersen, Judge.

Landlord and tenant seek further review of court of appeals decision on attorney fee award after offer to confess judgment. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield, McDonald, Oxley, and McDermott, JJ., joined. Appel, J., filed an opinion concurring in part and dissenting in part.

Thomas W. Lipps (argued) of Peterson & Lipps, Algona, for appellant.

Wesley T. Graham of Duncan Green, P.C., Des Moines, and Philip J. Kaplan (argued) of Anthony Ostlund Baer & Louwagie, P.A., Minneapolis, Minnesota, for appellee.

**WATERMAN, Justice.**

In this appeal from rulings on cross-motions for attorney fees in a contract dispute, we must decide three legal issues: (1) who is "the prevailing party"; (2) whether Iowa Code section 625.25 (2017) precludes a fee award when the presuit demand for unliquidated damages greatly exceeded the jury verdict; and (3) whether a rejected offer to confess judgment precludes recovery of the plaintiff's postoffer contractual attorney fees by operation of Iowa Code section 677.10. The parties litigated claims over the breach of a farm lease that entitled "the prevailing party" to recover reasonable attorney fees. The plaintiff's presuit demand was $190,564. The defendant offered to confess judgment for $75,000 before trial, which the plaintiff rejected. The district court granted the defendant's motion for partial summary judgment, the case proceeded to trial on the remaining count, and the jury awarded the plaintiff $41,453.57. Both sides sought attorney fees. The district court ruled the plaintiff alone was the prevailing party entitled to fees and that neither statute barred the fee award. The court of appeals reversed in part, holding that the plaintiff recovering less than the amount of the offer to confess cannot recover postoffer attorney fees that are expressly taxed as costs under section 625.22. Both sides applied for further review, which we granted.

On our review, we affirm the ruling that the plaintiff alone is the prevailing party and the defendant is entitled to no fees. We determine that the district court did not abuse its discretion in finding the plaintiff complied with section 625.25. We read sections 625.22 and 677.10 together to hold that prevailing-party contractual attorney fees are considered "costs" when determining the effect of an offer to confess judgment. When, as here, the plaintiff recovers less at trial than the

amount of the offer, the statute bars recovery of its attorney fees incurred after the rejected offer to confess. This furthers the purpose of section 677.10: to encourage settlements. We affirm the court of appeals decision and remand the case to the district court to reduce the fee award consistent with this opinion.

## I. Background Facts and Proceedings.

On February 24, 2012, WMG, L.C., as landlord, and NCJC, Inc., as tenant, executed a commercial lease of 600 acres of farmland in Kossuth County for annual cash rent of $136,449.70.[1] The one-year lease term ran to February 28, 2013, but would automatically renew absent written notice of termination. The lease provided that if it was not renewed, WMG would reimburse NCJC for the remaining benefits of fertilizer NCJC had previously applied to the land. The lease gave a right of first refusal to NCJC to purchase the leased land. And Section 20 of the lease provided, "If either party files suit to enforce any of the terms of this Lease, the prevailing party shall be entitled to recover court costs and reasonable attorney's fees."

On March 1, 2017, WMG terminated the lease. WMG refused NCJC's demands for reimbursement for fertilizer it had previously applied. WMG distributed several parcels of the farmland to WMG members without allowing NCJC to exercise its right of first refusal. NCJC demanded $190,564 in reimbursement for fertilizer, an amount that exceeded the annual cash rent for the farmland. WMG rejected that demand as excessive.

On March 31, NCJC filed suit against WMG, alleging breach of contract. Count I sought recovery for WMG's failure to reimburse for

---

[1]The members of WMG are Michael Goche, Jeanne Goche Horihan, Renee Afshar, and Joseph Goche. Michael and Jeanne are the managers.

fertilizer NCJC had applied. Count II alleged WMG's failure to allow NCJC to exercise its right of first refusal and sought specific performance. NCJC demanded payment of its attorney fees under Section 20 of the lease. WMG filed an answer, alleging that the right of first refusal expired when the lease was terminated and that NCJC had failed to provide support for its reimbursement claims. WMG counterclaimed for slander of title; on October 12, the district court dismissed the counterclaim.

On November 1, WMG moved for summary judgment on count II; NCJC resisted. On November 17, WMG filed its offer to confess judgment in the amount of $75,000, which NCJC rejected. On February 28, 2018, the district court granted summary judgment in favor of WMG dismissing count II, ruling that "WMG's distribution of the Real Estate to the Members [was not] a sale triggering NCJC's right of first refusal."

The case proceeded to trial on count I. On May 9, the jury returned a verdict in favor of NCJC, finding that WMG breached the lease agreement by failing to reimburse input costs and awarding $41,453.57 in damages. The parties filed cross-motions for attorney fees and costs. Each side claimed to be a prevailing party entitled to attorney fees under Section 20 of the lease. The district court ruled that NCJC alone was the prevailing party for purposes of the contractual fee award, and declined to award WMG any attorney fees. The district court rejected WMG's contention that NCJC failed to comply with Iowa Code section 625.25, which in certain cases requires a presuit "reasonable opportunity to pay the debt" before allowing attorney fees. The district court also rejected WMG's argument that Iowa Code section 677.10 precluded attorney fees incurred after NCJC rejected its offer to confess judgment. Finally, the district court evaluated what amount to award NCJC as a reasonable attorney fee, and awarded $55,000, just under half of the $107,484.50 in fees sought.

WMG appealed, and we transferred the case to the court of appeals, which affirmed in part and reversed in part. The court of appeals concluded that NCJC was the prevailing party and affirmed the district court's ruling denying any fee award to WMG. The court of appeals affirmed the ruling that NCJC complied with Iowa Code section 625.25. The court of appeals reversed the award of attorney fees to NCJC incurred after WMG's offer to confess judgment, holding that attorney fees are included as costs under sections 625.22 and 677.10. Both parties applied for further review, which we granted.

## II. Scope and Standard of Review.

"We review the court's award of attorney fees for an abuse of discretion." *Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 832 (Iowa 2009) (per curiam). "Reversal is warranted only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable." *Id.* (quoting *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000)). "[M]isapplication of the statute constitutes an abuse of discretion." *Gabelmann*, 606 N.W.2d at 344.

"A review of statutory construction is at law." *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 164 (Iowa 2016) (quoting *GE Money Bank v. Morales*, 773 N.W.2d 533, 536 (Iowa 2009)); *see also Harris v. Olson*, 558 N.W.2d 408, 409 (Iowa 1997) (reviewing the district court's interpretation of Iowa Code chapter 677 for the correction of errors at law).

## III. Analysis.

"Iowa follows the American rule: 'the losing litigant does not normally pay the victor's attorney's fees.'" *Guardianship & Conservatorship of Radda v. Wash. State Bank*, 955 N.W.2d 203, 214 (Iowa 2021) (quoting *Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 474 (Iowa 2017)). "Generally, attorney fees are recoverable only by statute or under

a contract." *Id.* (quoting *Thornton*, 897 N.W.2d at 474). This appeal involves no underlying fee-shifting statute and both sides seek their attorney fees pursuant to Section 20 of their lease agreement, which provides, "If either party files suit to enforce any of the terms of this Lease, the prevailing party shall be entitled to recover court costs and reasonable attorney's fees."

We have three issues to decide: First, who is the prevailing party? Second, did the district court abuse its discretion in finding that NCJC complied with Iowa Code section 625.25? Third, does the term "costs" in Iowa Code section 677.10 include contractual attorney fees taxed as costs under section 622.22? We address each issue in turn.

**A. WMG Is Not the Prevailing Party.** In the posttrial motions for attorney fees, each party argued that it was the "prevailing party." Their lease entitles "*the* prevailing party"—singular—to reasonable attorney fees. There is only one prevailing party here. WMG argues that it prevailed because NCJC recovered far less at trial than its first demand of $190,564 and the district court granted WMG's motion for partial summary judgment dismissing count II. WMG further argues it is the prevailing party in the phase of litigation after NCJC rejected its $75,000 offer to confess judgment, because the jury awarded a lower amount. The district court and court of appeals determined that NCJC alone was the prevailing party because it recovered $41,453 from WMG in the judgment on the jury verdict for fertilizer.

We agree with the district court and court of appeals that NCJC alone is the prevailing party based on its recovery of a money judgment against WMG. *See Lee v. State*, 874 N.W.2d 631, 645 (Iowa 2016) ("[B]ecause 'the prevailing party inquiry does not turn on the magnitude of the relief obtained,' even an award of nominal damages confers eligibility

to receive an attorney fee award under that standard." (quoting *Farrar v. Hobby*, 506 U.S. 103, 113–14, 113 S. Ct. 566, 574 (1992))). "Generally speaking, 'status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares on each motion along the way.' " *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001) (quoting *Jenkins v. Missouri*, 127 F.3d 709, 714 (8th Cir. 1997) (en banc)). In *Dutcher v. Randall Foods*, we approvingly cited federal caselaw allowing "prevailing party" attorney fees even though the ultimate recovery fell below settlement demands or offers. 546 N.W.2d 889, 895 (Iowa 1996) (citing *Haworth v. Nevada*, 56 F.3d 1048, 1052 (9th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994)). Indeed, *Black's Law Dictionary* defines "prevailing party" as one "in whose favor a judgment is rendered, *regardless of the amount of damages awarded.*" *Prevailing Party*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

We conclude this precedent applies to define "prevailing party" in this breach of contract action. We hold NCJC alone is the prevailing party notwithstanding that the jury awarded a lower amount than its presuit demand or WMG's offer to confess judgment. The district court correctly denied WMG's request for its attorney fees.

**B. NCJC Complied with Iowa Code Section 625.25.** WMG argues that NCJC is not entitled to any attorney fees because it failed to allow WMG a reasonable opportunity to pay the fertilizer reimbursement as required by Iowa Code section 625.25. Specifically, WMG contends that because NCJC's presuit demand of $190,564 was unreasonable as measured against annual rent of $136,449 and the jury verdict of $41,453,

WMG was denied a reasonable opportunity to pay the debt.[2]  The district court and court of appeals rejected WMG's argument.

We begin with the text of the statute, which provides:

> No such attorney fee shall be taxed if the defendant is a resident of the county and the action is not aided by an attachment, unless it shall be made to appear that such defendant had information of and *a reasonable opportunity to pay the debt before action was brought*.  This provision, however, shall not apply to contracts made payable by their terms at a particular place, the maker of which has not tendered the sum due at the place named in the contract.

Iowa Code § 625.25 (emphasis added).  "The primary purpose of Iowa Code section 625.25 is to provide the debtor a reasonable opportunity to discharge his debt before suit is filed in order to avoid payment of any costs and attorneys fees, . . . ."  *Peoples Tr. & Sav. Bank v. Baird*, 346 N.W.2d 1, 4 (Iowa 1984).  We have applied section 625.25 in actions to collect on overdue loans where the amount owed was a sum certain.  *See, e.g., id.* at 3, 5 (limiting fee award to correspond "to the two overdue installment payments of which Bairds had received written notice before suit was commenced").  We have never applied section 625.25 to bar an attorney fee claim in an action to recover unliquidated damages where the parties contested the amount owed.[3]  In fact, the last time we applied the statute at all was thirty-seven years ago.  *See id.*

---

[2]WMG did not provide a transcript of the jury trial, precluding our court from evaluating the reasonableness of NCJC's presuit demand based on the evidence offered at trial.  "It is the appellant's burden to provide the record supporting its legal argument." *Jones v. Glenwood Golf Corp.*, 956 N.W.2d 138, 143 n.1 (Iowa 2021).

[3]We have only four other cases addressing appeals from rulings applying section 625.25: *Home Savings & Loan Ass'n v. Iowa City Inn, Inc.*, 260 Iowa 1321, 1323, 152 N.W.2d 588, 589 (1967) (involving a mortgage debt); *Federal Land Bank of Omaha v. Wilmarth*, 218 Iowa 339, 346–47, 252 N.W. 507, 511 (1934) (involving a prior version of the statute and a mortgage debt); *Fellers v. Sanders*, 202 Iowa 503, 506–07, 210 N.W. 530, 532 (1926) (same); *Moore v. Crandall*, 146 Iowa 25, 31–32, 124 N.W. 812, 815 (1910) (same).

The statute is an imperfect fit with Iowa Code section 625.22, which allows the district court to tax a reasonable attorney fee as part of the costs when the contract contains an agreement to pay attorney fees. In contrast, Iowa Code section 625.25 does not require a reasonable estimation of the debt to be provided; it requires a reasonable *opportunity* to pay the debt *before* suit is brought. Thus, its focus is temporal. It exempts (1) out-of-county defendants, (2) situations where an attachment is obtained, and (3) situations where the contract requires performance at a particular place. These exemptions make no sense if the purpose of the statute is to give the defendant presuit notice of the *amount* they owe; however, they make perfect sense if the purpose of the statute is to give the defendant presuit notice that they have failed to pay a debt and are facing court proceedings that will incur attorney fees the defendant can avoid by paying the debt. At least when the statute was written over a century ago, it might have been impractical to require such notice to be given in the next county; it would have been unnecessary to give such a notice if the contract itself told the defendant where they had to perform, and it would have defeated the purpose of an attachment to require the plaintiff to spoil the surprise before the attachment occurred.[4]

We agree with the court of appeals that the pleadings themselves showed compliance with the statute. In its petition, NCJC alleged:

> Despite a demand by NCJC for reimbursement for the unused portion of the allocated benefit of the phosphate, potash, lime and trace minerals that were applied to the Subject Real Estate prior to termination of the Lease, WMG

---

[4]Iowa Code chapter 639 allows the plaintiff to attach property held by the defendant at the commencement of the civil action, on grounds including "[t]hat the defendant is about to remove the defendant's property or a part thereof out of the county with intent to defraud the defendant's creditors." Iowa Code §§ 639.1, .3(9). Presuit notice could allow the defendant to move the property before it can be attached.

has failed and refused to make any of the payment required
by Section 4 of the Lease.

In its answer, WMG "[a]dmitted that WMG has not paid NCJC for the amounts demanded." WMG also acknowledged that NCJC had sent it an invoice in the amount of $190,564.62 on January 9—eighty-one days before NCJC filed the petition.

Like the court of appeals, we find no abuse of discretion in the district court's determination that NCJC satisfied section 625.25. Where the debt is unliquidated, we believe it is sufficient to comply with section 625.25 if the plaintiff gives the defendant reasonable advance notice of the basis for the debt, even if the computation of the amount of the debt is off the mark. Unrealistic monetary demands can be considered under section 625.22; they do not necessarily preclude an award under section 625.25. *See Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007) (stating that in exercising its discretion under section 625.22, "[t]he district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case") (quoting *Lynch v. City of Des Moines*, 464 N.W.2d 236, 238 (Iowa 1990) (en banc)).[5]

**C. The Effect of the Rejected Offer to Confess Judgment.** We turn now to the offer to confess judgment—a better vehicle for the defendant in a breach of contract action to avoid or reduce liability for the plaintiff's attorney fees. The court of appeals held Iowa Code sections 677.10 and 625.22 operated together to preclude recovery of NCJC's attorney fees incurred after it rejected WMG's offer to confess judgment. We agree.

---

[5]Indeed, the district court determined that a reasonable attorney fee for NCJC was $55,000, which was less than the $107,484.50 claimed. NCJC does not challenge that reduction on appeal.

Whether the term "costs" in section 677.10 includes attorney fees is a question of statutory interpretation. We begin with the text of the statute, which provides, "If the plaintiff fails to obtain judgment for more than was offered by the defendant, the plaintiff cannot recover costs, but shall pay the defendant's costs from the time of the offer." Iowa Code § 677.10. Chapter 677 does not define "costs" or mention attorney fees. In *Weaver Construction Co. v. Heitland*, we held that the term "costs" in section 677.10 did not include attorney fees. 348 N.W.2d 230, 233 (Iowa 1984). NCJC relies on *Weaver*, as did the district court, in contending that postoffer fees are not cut off by section 677.10. In *Weaver*, however, no statute or contract allowed the plaintiff to recover its attorney fees from the defendant. *Id.* at 232–33.

Five years later, in *Brockhouse v. State*, we adjudicated the effect of an offer to confess in a case where the prevailing party was entitled by statute to recover attorney fees. 449 N.W.2d 380, 381 (Iowa 1989). We held that section 677.10 cut off the postoffer attorney fees incurred by a condemnee who recovered more than was initially awarded by the compensation commission (triggering a right to attorney fees under Iowa Code section 472.33) but less than the state's offer to confess. *Id.* at 381, 383. We provided little or no analysis and simply noted the district court fee award "included fees for services provided after the time of the department's offer. They are not entitled to these fees." *Id.* at 383 (citing Iowa Code § 677.10 (1987)). The court of appeals relied on *Brockhouse* to interpret section 677.10's term "costs" as including attorney fees that are by statute recoverable as costs. We agree with the court of appeals that *Brockhouse* is controlling, not *Weaver*. We apply stare decisis and decline to overrule *Brockhouse*. *See Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015) ("Stare decisis alone dictates continued

adherence to our precedent absent a compelling reason to change the law.").

NCJC as the prevailing party is contractually entitled to recover its reasonable attorney fees from WMG under Section 20 of their farm lease agreement. As Iowa Code section 625.22, in relevant part, provides, "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and *tax as a part of the costs a reasonable attorney fee* to be determined by the court." Iowa Code § 625.22 (emphasis added). We read related statutes together. Contractual attorney fee awards are taxed as costs under section 625.22. Under *Brockhouse*, attorney fees taxed as costs by statute constitute "costs" within the meaning of section 677.10. *See* 449 N.W.2d at 383. We construe the term "costs" as having the same meaning under sections 625.22 and 677.10, which work together. After NCJC rejected WMG's offer to confess in the amount of $75,000, the jury awarded $41,453 for breach of contract. The court of appeals correctly applied section 677.10 to cut off NCJC's recovery of postoffer costs (including attorney fees).

Our interpretation furthers the "well-recognized purpose of chapter 677 [which] is 'to encourage settlement of disputes, put an end to litigation, and to prevent the accumulation of costs.' " *Harris*, 558 N.W.2d at 410 (quoting *Hughes v. Burlington N. R.R.*, 545 N.W.2d 318, 320 (Iowa 1996)). The contrary interpretation sought by NCJC "would promote increased litigation, not settlement." *Id.*

Our analysis is supported by persuasive caselaw construing Federal Rule of Civil Procedure 68, entitled, "Offer of Judgment," which provides, "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). The federal rule, like Iowa Code section

677.10, does not define "costs." *See id.* R. 68. In the seminal case of *Marek v. Chesny*, decided a year after our decision in *Weaver*, the United States Supreme Court held that "absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." 473 U.S. 1, 9, 105 S. Ct. 3012, 3016 (1985). This holding remains well-established. Danielle M. Shelton, *Rewriting Rule 68: Realizing the Benefits of the Federal Settlement Rule by Injecting Certainty into Offers of Judgment*, 91 Minn. L. Rev. 865, 896 (2007) ("While most commentators agree that it [is] at least somewhat 'bizarre' to make the question of Rule 68's treatment of attorneys' fees depend on whether a 'particular statute happens to have chosen to express the right to attorneys' fees as costs or not,' that law is well-established under the legacy of Marek." (quoting Symposium, *Revitalizing FRCP 68: Can Offers of Judgment Provide Adequate Incentives for Fair, Early Settlement of Fee-Recovery Cases?*, 57 Mercer L. Rev. 791, 811 (2006))). Many other state appellate courts have followed *Marek* to include attorney fees as costs under equivalent offer-to-confess-judgment rules.[6]

---

[6]*See, e.g., Hamilton v. Nationwide Mut. Fire Ins.*, C.A. No. K16C–03–012 WLW, 2018 WL 6042813, at *1, *3–4 (Del. Super. Ct. Nov. 16, 2018) (awarding fees as costs under Delaware's Superior Court Rule 68 based on underlying insurance fee-shifting statute allowing fees "taxed as part of the costs" (quoting Del. Code Ann. tit. 18, § 4102)); *Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 326–27 (Minn. 2003) (en banc) ("Therefore, based on the language of [Minnesota Rule of Civil Procedure] 68, policy considerations, and [*Marek*'s] interpretation of the similarly worded federal rule, we conclude that when the statute that underlies the plaintiff's cause of action allows attorney fees as part of costs and disbursements, Rule 68 costs and disbursements can include attorney fees."); *McMahan v. McMahan*, 38 N.Y.S.3d 728, 733 (Sup. Ct. 2016), *aff'd sub nom. Perry v McMahan*, 84 N.Y.S.3d 508 (App. Div. 2018) ("Here, by analogy, attorney's fees are recoverable, not by statute, but by agreement. Just as [*Marek*] reasoned that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority, this Court finds that the term 'costs' in [New York's offer of judgment rule] includes attorney's fees which are properly recoverable in the action by agreement of the parties."); *Rule v. Tobin*, 719 A.2d

In *Marek*, the plaintiffs sued police officers under 28 U.S.C. § 1983 and state tort law after the officers shot and killed their adult son when responding to a domestic disturbance. 473 U.S. at 3, 105 S. Ct. at 3013. The defendants offered to confess judgment for $100,000, which was not accepted; the jury ultimately awarded less. *Id.* at 3–4, 105 S. Ct. at 3013–14. The Supreme Court held that rule 68 cut off the plaintiff's postoffer attorney fees otherwise available under section 1988. *Id.* at 11–12, 105 S. Ct. at 3018. The *Marek* Court noted the "plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Id.* at 5, 105 S. Ct. at 3014. "To be sure, application of Rule 68 will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates." *Id.* at 11, 105 S. Ct. at 3017. The Court rejected the argument that its reading of rule 68 undercut the purpose of the fee-shifting statute that allowed recovery of "reasonable" attorney fees:

> Rather than "cutting against the grain" of § 1988, as the Court of Appeals held, we are convinced that applying Rule 68 in the context of a § 1983 action is consistent with the policies and objectives of § 1988. Section 1988 encourages plaintiffs to bring meritorious civil rights suits; Rule 68 simply encourages settlements. There is nothing incompatible in these two objectives.

---

869, 871–72 (Vt. 1998) (following *Marek* to hold that, under identical Vermont Rule of Civil Procedure 68, civil rights attorney fees are included as costs); *Hodge v. Dev. Servs. of Am.*, 828 P.2d 1175, 1177–78 (Wash. Ct. App. 1992) ("We agree with the *Marek* holding that 'costs' [under Washington Superior Court Civil Rule 68] may or may not include attorneys' fees depending on the underlying statute in question."); *Shafer v. Kings Tire Serv., Inc.*, 597 S.E.2d 302, 307 (W. Va. 2004) (following *Marek* to "hold that costs included under West Virginia Rule of Civil Procedure Rule 68(a) include attorney's fees when any statute applicable to the case defines costs as including attorney's fees").

The concurrence in part and dissent in part fails to cite any post-*Marek* decision of another state's appellate court holding "costs" do *not* include attorney fees in an equivalent offer-to-confess-judgment rule when the underlying contract or statute allows recovery of fees taxed as costs.

*Id.* at 11, 105 S. Ct. at 3017–18; *see also Catalina Yachts v. Pierce*, 105 P.3d 125, 130–31 (Alaska 2005) (reaching same conclusion under Alaska Rule of Civil Procedure 68 and fee-shifting provision in the Magnuson-Moss Act).  We agree with this reasoning.

Our holding today leaves the ultimate responsibility to choose whether to allow or deny attorney fees under Iowa Code section 677.10 in the elected branches best suited to evaluate the competing policy choices. As the Washington Court of Appeals aptly observed following *Marek*,

> [B]y relying on the underlying statute the court places the ultimate responsibility to make the decision where it should be—on the Legislature.  There is inevitably a tension between the policy of CR 68 as interpreted in *Marek* to promote settlements by limiting plaintiff's attorneys' fees on the one hand, and the policy of many civil rights and consumer protection statutes to facilitate, indeed, to encourage enforcement litigation.  As has frequently been expressed, a successful civil rights case not only vindicates the rights of the individual but also serves a broader purpose to eliminate discrimination in society.  It is for the Legislature to strike the proper balance between these competing values.

*Hodge v. Dev. Servs. of Am.*, 828 P.2d 1175, 1178 (Wash. Ct. App. 1992) (footnote omitted).[7]  Meanwhile, legislators could reasonably conclude that Iowa Code section 677.10's potential impact on fee recoveries will level the playing field by encouraging settlement of low-damage statutory liability claims that plaintiff's counsel otherwise might take to trial simply to increase the fee award.

The WMG–NCJC lease allows the prevailing party an award of its "reasonable attorney's fees."  Iowa Code section 625.22 likewise limits the

---

[7]Indeed, in response to *Marek*, Congress amended Title VII to separate fees from costs.  *See Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083–84 (10th Cir. 1998) (reviewing legislative history).  Congress, however, left intact Federal Rule of Civil Procedure 68 and numerous other federal statutes that include or tax fees as costs, and *Marek* remains applicable today in civil actions brought under such statutes.

amount to be taxed as costs to "reasonable" attorney fees. Iowa Code section 677.10 can be seen as the legislature's bright-line determination that attorney fees incurred after the claimant rejects an offer to confess judgment are deemed unreasonable if the jury awards less than the amount offered. Our resolution of this issue does not shift WMG's attorney fees to NCJC. As noted, WMG is not a prevailing party under their contract or Iowa Code section 625.22. Rather, our resolution blocks NCJC from recovering its postoffer fees from WMG.

Our holding under section 677.10 is limited to attorney fees where the governing statute (here, section 625.22) provides that the attorney fees are to be taxed as costs or included as costs. "Our opinion . . . should not be taken as expressing a view that when the term 'costs' is used in other contexts, it encompasses attorneys' fees." *De Stefano*, 879 N.W.2d at 165–66, 174 (holding that attorney fees under the Uniform Residential Landlord and Tenant Act, Iowa Code § 562A.12(8), are included as "costs" omitted from determining the jurisdictional limit for small claims court defined in § 631.1(1) as "five thousand dollars or less . . . exclusive of interest and costs" (omission in original)).[8]

## IV. Disposition.

For the foregoing reasons, we affirm the decision of the court of appeals, and reverse the district court ruling to the extent it awarded NCJC fees incurred after WMG offered to confess judgment. We remand the case

---

[8]Justice Appel's concurrence in part and dissent in part does a deep dive going back centuries into varying treatments of costs and attorney fees, and a thorough review of caselaw, statutes, and rules addressing the issue, yet remarkably fails to mention, much less explain away, our court's holding in *De Stefano* that the term "costs" in the small claims statute includes attorney fees. *See* 879 N.W.2d at 174. Justice Appel wrote the majority opinion in *De Stefano* five years ago and addressed the issue there in depth, but reached the opposite conclusion. *Id.* His resolution of the costs vs. fees issue today would effectively overrule *De Stefano* on that point, which the legislature has declined to do.

for the district court to recalculate the fee award consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., and Mansfield, McDonald, Oxley, and McDermott, JJ., join this opinion. Appel, J., files an opinion concurring in part and dissenting in part.

**APPEL, Justice (concurring in part and dissenting in part).**

I concur with most of the majority opinion, but I dissent on the question of whether a party is entitled to attorney fees under the cost-shifting statute of Iowa Code section 677.10 (2017). The court should swiftly and cleanly apply the traditional rule that "costs" are not "attorney fees." Not only does the court wrongly depart from textual and traditional principles that the majority ordinarily finds persuasive, it adopts a legal regime that is a morass that will be nothing but trouble in future cases.

**I. Overview.**

The question of who pays attorney fees is a big deal. This is so for a number of reasons. First, potential litigants with few resources are at a distinct disadvantage in legal disputes where attracting skilled lawyers, if not a prerequisite for success, greatly increases the odds of a positive outcome. Second, our legal system has become more complicated and thus more expensive. Under the circumstances, an underdog risks being crushed by the resource imbalance notwithstanding the underlying merits of the case.

At common law, the prevailing party was entitled to recover attorney fees. The common law approach to fee-shifting made litigation a risky business even under the best of circumstances. Those feisty rebels, now called Americans, adopted a distinctly different approach. Under the American rule, each party bears its own expenses in litigation, including attorney fees. The purpose of the American rule was to ameliorate the harshness of the common law approach.

The American rule now has deep roots in our law. Yet, over time, legislatures began to enact statutes altering the American rule in some situations to allow an award of attorney fees to a prevailing party. Some

of these fee-shifting statutes are leveling the playing field regimes, while others apply in commercial settings where the power imbalance between the parties may be less pronounced or nonexistent. *See* Rochelle Cooper Dreyfuss, Note, *Promoting the Vindication of Civil Rights Through the Attorney's Fees Awards Act,* 80 Colum. L. Rev. 346, 349 (1980).

The question of whether attorney fees could be awarded to a party is a distinctly different question than whether the costs of litigation might be imposed on a party. The costs of litigation have traditionally been distinguished from "expenses" including attorney fees.

In this case, we are called upon to consider the provisions of Iowa Code section 677.10. That provision provides: "If the plaintiff fails to obtain judgment for more than was offered by the defendant, the plaintiff cannot recover costs, but shall pay the defendant's costs from the time of the offer." Iowa Code § 677.10.

The question here is whether costs in this statute may be construed to include attorney fees. Remarkably, the majority tells us sometimes—depending upon the wording of the underlying fee-shifting statute found elsewhere in the Code. In other words, the term "costs" in Iowa Code section 677.10 is not fixed but depends upon variable wording in fee-shifting statutes. I disagree with the approach.

First, in my view, the word "costs" should be given its traditional meaning. The traditional view found in many cases from multiple jurisdictions is that "costs" means the ministerial costs tacked on at the conclusion of litigation by the court. In a court that occasionally prides itself on "plain meaning," it is surprising that the legislative choice of wording does not carry the day. While the majority retreats to policy implications, touting the approach as encouraging settlement, I think the

policy implications cut in exactly the opposite direction and will encourage settlement of cases for less than their real worth.

Second, in my view the majority errs when it chooses to adopt the oddball and historically unjustified approach of the United States Supreme Court in *Marek v. Chesny*, 473 U.S. 1, 105 S. Ct. 3012 (1985). The *Marek* case was not cited by either party, and for good reason. In *Marek*, the Supreme Court upended a cart of legal potatoes when it departed from its precedent and discovered that the term "costs" in Federal Rule of Civil Procedure 68, did not have a fixed meaning but depended on fine distinctions in verbiage in fee-shifting statutes. The *Marek* decision set off a congressional firestorm and led to legislative action in the Civil Rights Act of 1991 abrogating the result of the case. For the linguistic, practical, and policy reasons explained in detail below, I have no interest in following the *Marek* precedent.

Finally, even if we were to incorporate a *Marek*-type floating meaning approach into our law, it is misapplied by the majority. According to *Marek*, the question of whether attorney fees were recoverable as costs under rule 68 depended on close reading of the language used in the underlying fee statute. 473 U.S. at 9, 105 S. Ct. at 3016. In *Marek*, the underlying civil rights statute provided that "the court . . . may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Here, the underlying fee-shifting statute, Iowa Code section 625.22, states that "[w]hen judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow *and tax as a part of the costs a reasonable attorney fee to be determined by the court.*" (emphasis added). While the language in the underlying statute in *Marek* that declared that attorney fees were "part of the costs," the language in Iowa Code section 625.22 makes it clear that attorney fees

pursuant to a contractual provision are not part of a damage claim that must be proven at trial and awarded by a jury but are instead *taxable* as part of costs at the conclusion of the proceeding.

The majority's disposition in this case does not shift the defendant's attorney fees to the plaintiff because the defendant was not a prevailing party under their lease. The majority decision, however, prevents the plaintiff from recovering postoffer attorney fees from the defendant because the plaintiff's ultimate damages award was less than the offer. Under my approach to Iowa Code section 625.22, the plaintiff is entitled to postoffer attorney fees from the defendant because the plaintiff was the prevailing party under the lease. The reasonable attorney fees are taxed as a part of costs under section 625.22 and are not blocked from the cost-shifting provision of Iowa Code section 677.10 because in my view attorney fees are not costs.

For the above reasons, I would hold that in this case, the plaintiff is not liable for the attorney fees incurred by the defendant after the offer to confess judgment and that the plaintiff is entitled to postoffer attorney fees under the lease agreement and Iowa Code section 625.22. The details follow below.

## II. Traditional Approach to "Costs" and "Attorney Fees."

**A. Introduction.** While I am ordinarily not much of a fan of "plain meaning," statutory language remains the starting point of analysis. In Iowa Code section 625.22 and section 677.10, the term "costs" appears. Usually textualists will scour through a cornucopia of dictionary definitions, pick the definition they like, and call it a day.

The majority eschews that approach, which I think is okay given the wide choices ordinarily available from various dictionaries. But from the standpoint of both legal theory and caselaw, it is clear that, traditionally

at least, costs and attorney fees are not twins, not even siblings, really, but belong to different families. In my view, we should simply follow the traditional view that costs and attorney fees are different and call it a day.

**B. Iowa Caselaw.** Iowa has had a cost-shifting statute since the early days of statehood. The language of Iowa Code section 677.10 is a direct descendant of the earlier versions. For instance, in 1860, Iowa Code sections 3405–07 provided that if after an offer the plaintiff does not exceed the sum offered, "the defendant shall recover his costs incurred in the defense, in respect to the question of amount to be taxed under the direction of the court." Iowa Code § 3406 (1860). Notably, this statute dealing with confession of judgments predated many of our modern statutes that shift attorney fees in certain situations. Clearly its purpose was not to shift attorney fees.

What has the term "costs" meant historically in Iowa? A line of Iowa cases follow the traditional approach that costs are not attorney fees. For example, in *Boardman v. Marshalltown Grocery Co.*, we noted that attorney fees and other expenses are not part of the costs. 105 Iowa 445, 451, 75 N.W. 343, 345 (1898). The *Boardman* court was not wishy washy on the issue, stating, "If anything is well settled, it is that such items [including attorney fees] can neither be recovered nor taxed." *Id.*

For the next fifty years, the *Boardman* principle was rock solid. In *Turner v. Zip Motors*, we declared that attorney fees under Iowa Code section 625.1 (1954) were not recoverable as costs in litigation. 245 Iowa 1091, 1100, 65 N.W.2d 427, 432 (1954). We declared that, " 'Costs shall be recovered by the successful against the losing party.' This has always been held to mean the ordinary costs, not including attorney fees." *Id.* (quoting Iowa Code § 625.1).

In *Weaver Construction Co. v. Heitland,* we considered whether attorney fees were within the scope of the term "costs" in Iowa Code section 677.10 (1983). 348 N.W.2d 230, 232–33 (Iowa 1984). We stated that "we do not agree . . . that the word 'costs' should be so liberally stretched as to include attorney fees." *Id.* at 233. We did not regard it as a close issue. We stated that "the legislative intent of chapter 677 is clear; attorney fees are not included in the cost-shifting which the statute allows because attorney fees are not explicitly mentioned in the statute." *Id.*

Several years later, we considered the enforceability of an offer to confess judgment in *Brockhouse v. State*, 449 N.W.2d 380 (Iowa 1989). In *Brockhouse*, the fighting issue was the meaning of an offer of settlement of "$10,000 'with costs.' " *Id.* at 382. Did "with costs" mean that costs were included within the $10,000, or did "with costs" mean that an additional sum beyond $10,000 would be paid for costs? *Id.* at 383. We noted that the term of the offer in the case tracked the language of the statute. *Id.* The parties in *Brockhouse* agreed that Iowa Code section 472.33 (1987) required "the department-to pay attorney fees as costs when the jury awards the condemnee a larger amount on appeal than was initially awarded by the compensation commission." *Id.* at 381.

**C. Other State Court Authorities.** There is ample authority in state courts for the proposition found in the Iowa precedents, namely, when the legislature uses the term "costs," it means fees and charges such as filing fees, fees for service of process, and the like, but not attorney fees. *See All. Indem. Co. v. Kerns*, 398 P.3d 198, 204 (Kan. Ct. App. 2017); *see also Freiburger v. J-U-B Eng'rs, Inc.*, 111 P.3d 100, 109 (Idaho 2005); *Nat'l Union Fire Ins. of Pittsburgh, P.A. v. Dixon*, 112 P.3d 825, 830 (Idaho 2005) ("When the legislature has intended that the term costs cover attorney fees, it has so provided."); *Trs. of Ind. Univ. v. Buxbaum*, 69 P.3d 663, 670 (Mont.

2003); *Kintner v. Harr*, 408 P.2d 487, 498 (Mont. 1965); *Pub. Entity Pool for Liab. v. Score*, 658 N.W.2d 64, 67–70 (S.D. 2003); *Soundgarden v. Eikenberry*, 871 P.2d 1050, 1064 (Wash. 1994) (en banc).

Many states have adopted a rule of civil procedure that authorizes the shifting of certain costs after the refusal of an offer to confess. The rules are highly variable, but, in general, as observed by one academic, the trend shows increasing rejection of rule 68 as a model when states adopt their own version of offer of judgment rules or statutes. *See* William P. Lynch, *Rule 68 Offers of Judgment: Lessons from the New Mexico Experience*, 39 N.M. L. Rev. 349, 350 (2009).

But the limited definition of costs has been applied by a number of courts in considering the effect of statutes or rules that are similar to rule 68. For example, in *Person v. Fletcher*, the Tennessee Court of Appeals held that the term "all costs" in a statute permitting cost-shifting are those costs expressly designated by statute, and the statute at issue limited costs to those taxed by the clerk of court when passing upon applications for costs. 582 S.W.2d 765, 766–67 (Tenn. Ct. App. 1979). In *Missi v. CCC Custom Kitchens, Inc.*, the Indiana Court of Appeals characterized costs in its rule related to offers to confess as a "term of art" and that there was nothing in the history of drafting of the rule that suggested otherwise. 731 N.E.2d 1037, 1039–40 (Ind. Ct. App. 2000). *But see Canalez v. Bob's Appliance Serv. Ctr., Inc.*, 972 P.2d 295, 309–10 (Haw. 1999) (stating that the word "costs" is broadly defined in the statute to include "actual disbursements").

While state caselaw often construes the term costs in the traditional way, some states as a matter of substantive law have altered the cost-shifting approach. For example, in 1971 New Jersey enacted a rule that provided for the shifting of attorney fees up to $750. *See* N.J. Ct. R. 4:58.

In contrast, New Mexico has enacted a rule which expressly excludes attorney fees from recovery in its confession of judgment rule. *See* N.M. Dist. Ct. R. Civ. P. 1–068.

**D. Traditional Federal Caselaw Prior to *Marek*.** Historically, the federal caselaw generally stood for the proposition that costs and attorney fees were different items. As noted by one commentator, "In the federal courts, the practice is based upon the fundamental, essential, and common law doctrines and distinctions as to costs and fees." Philip M. Payne, *Costs in Common Law Actions in the Federal Courts*, 21 Va. L. Rev. 397, 397–98 (1934–1935) (emphasis omitted).

The Supreme Court recognized the distinction between costs and attorney fees long ago. In *Day v. Woodworth*, the Court emphasized that "the legal taxed costs are far below the real expenses incurred by the litigant." 54 U.S. (13 How.) 363, 372 (1851). The Supreme Court later recognized in *Sioux County v. National Surety Co.*, that an attorney fee award under a state statute was not the same as "costs in the ordinary sense of the traditional, arbitrary and small fees . . . allowed to counsel." 276 U.S. 238, 243–44, 48 S. Ct. 239, 241 (1928). In *Fleischmann Distilling Corp. v. Maier Brewing Co.*, the Supreme Court had no trouble coming to the conclusion that costs in the Lanham Act did not mean attorney fees. 386 U.S. 714, 719–21, 87 S. Ct. 1404, 1408–09 (1967).

The issue came to sharp focus in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S. Ct. 2455 (1980). There, the Supreme Court held that a statute authorizing an award of excess costs where attorneys have engaged in vexatious litigation did not authorize the award of attorney fees to the prevailing defendant. *Id.* at 767, 100 S. Ct. at 2465. The Supreme Court noted that under 28 U.S.C. § 1920, costs had been enumerated with some specificity. *Id.* at 758, 100 S. Ct. at 2460. The Supreme Court in

*Roadway Express* rejected the view that because civil rights statutes allowed for an award of attorney fees as costs, the scope of the term "costs" was not limited by the enumeration in 28 U.S.C. § 1920. *Id.* at 761, 100 S. Ct. at 2461. The Supreme Court noted that such an approach to costs would "create a two-tier system of attorney sanctions" and prevent a uniform approach across statutes consistent with the traditional approach to costs. *Id.* at 761–63, 100 S. Ct. at 2462.

A few years later in *Delta Airlines, Inc. v. August,* the Supreme Court considered the meaning of the term "costs" in Federal Rule of Civil Procedure 54(d). 450 U.S. 346, 351, 101 S. Ct. 1146, 1149 (1981). Under the rule, the prevailing party after judgment "recovers costs unless the trial court otherwise directs." *Id.* The *Delta* Court further considered the interplay between rule 54(d) and rule 68. *Id.* at 356–61, 101 S. Ct. at 1152–55.

**E. Summary.** Based on the above authorities, I would stay within the mainstream and conclude that the term "costs" does not include attorney fees for purposes of Iowa Code section 677.10 (2017). We have repeatedly noted that the legislature used the term "costs" and that the intent is clear that attorney fees are not included in the cost-shifting statute related to confessions of judgment. This interpretation of the term "costs" is a simple, workable approach that has stood the test of time and, to the extent the results are not satisfactory, is subject to legislative revision.

**III. Should We Adopt the *Marek* Approach Under Iowa Code Section 677.10?**

**A. Introduction.** In an important civil rights case, the Supreme Court in *Marek* considered whether costs under Federal Rule of Civil Procedure 68 included recovery of attorney fees. 473 U.S. at 3, 105 S. Ct.

at 3013. The case was controversial from the beginning, with the NAACP, the ACLU, and the New York City Bar, among others, filing amicus briefs in support of limiting the scope of costs to its traditional scope. The Supreme Court, however, determined that the term "costs" in rule 68 was variable, depending upon how costs are treated in the underlying fee statute. *Id.* at 9, 105 S. Ct. at 3016. Congress overruled the result with respect to the civil rights cases in 1991. Although there have been numerous proposals to amend rule 68 in light of *Marek*, the rule remains unchanged.

The majority opinion adopts the approach of the United States Supreme Court in its interpretation of Iowa Code section 677.10. For the reasons expressed below, I would not do so.

**B. Overview of *Marek*.**

1. *Factual and procedural background.* In *Marek*, three police officers answering a domestic disturbance call shot and killed the Chesny's son. 473 U.S. 1, 3, 105 S. Ct. 3012, 3013. Chesny on his own behalf and as administrator of his son's estate filed an action against the officers under 42 U.S.C. § 1983 and state tort law. *Id.* The defendants made a settlement offer prior to trial of "for a sum, including costs now accrued and attorney's fees, of ONE HUNDRED THOUSAND ($100,000) DOLLARS." *Id.* at 3–4, 105 S. Ct. at 3013–14. The plaintiffs rejected the offer. *Id.* at 4, 105 S. Ct. at 3014. At trial, the plaintiffs were awarded $5,000 on the state law claim, $52,000 on the § 1983 claim, and $3,000 in punitive damages. *Id.*

The plaintiffs filed a request for $171,692.47 in costs and attorney fees, including amounts incurred after the settlement offer. *Id.* The defendants, however, claimed that under rule 68, all costs incurred after

the offer of judgment were shifted to the plaintiffs and that the costs included attorney fees. *Id.*

The district court agreed with the defendants and declined to award attorney fees incurred after the offer of judgment. *Id.* The parties agreed that the allowable costs prior to the offer of judgment, including attorney fees, was $32,000. *Id.* The plaintiffs appealed the denial of postoffer costs. *Id.*

The United States Court of Appeals for the Seventh Circuit reversed the district court. *Id.* In an opinion by Judge Posner, the Seventh Circuit concluded that the approach of the district court would undermine the effectiveness of 42 U.S.C. § 1988. *Id.* The Seventh Circuit believed that if attorney fees were included in costs under rule 68, plaintiffs lawyers would need "to think very hard before rejecting it even if they consider it inadequate, knowing that rejection could cost themselves or their client a lot if it turned out to be a mistake." *Chesny v. Marek*, 720 F.2d 474, 479 (7th Cir. 1983).

2. *Majority opinion.* The majority opinion in *Marek* was written by Chief Justice Burger. The majority first considered whether the offer was valid. 473 U.S. at 5, 105 S. Ct. at 3014. The central question was whether a "lump-sum" offer was valid under the rule. *Id.* at 6–7, 105 S. Ct. at 3015. The majority concluded that under the language of the rule, there was no requirement that a party break down the components of an offer. *Id.* "As long as the offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer will be valid." *Id.* at 6, 105 S. Ct. at 3015.

The majority then turned to the question of whether costs in rule 68 included attorney fees. *Id.* at 7–8, 105 S. Ct. at 3016. The majority noted that prior to the enactment of rule 68 in 1938, there were several statutes that departed from the American rule and "allowed the court to 'award to

the prevailing party a reasonable attorney's fee as part of the costs.'" *Id.* at 8, 105 S. Ct. at 3016 (quoting 17 U.S.C. § 40). The majority reasoned that given the importance of costs to the rule, "the most reasonable inference is that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Id.* at 9, 105 S. Ct. at 3016. The majority suggested that the "plain meaning" of § 1988 included attorney's fees "as part of costs." *Id.* at 8–9, 3016–17.

In terms of methodology, the majority stressed that in order to shift costs under rule 68, the offer to confess must exceed the amount of recovery plus the costs incurred by the plaintiff prior to the time of the offer. *Id.* at 7, 105 S. Ct. at 3015. Postoffer costs are not part of the calculus. *Id.* at 7, 105 S. Ct. at 3015–16.

In considering the impact of the approach on civil rights cases, the majority rejected the view of the Seventh Circuit that the approach would frustrate congressional objectives. *Id.* at 10, 105 S. Ct. at 3017. The majority emphasized the role of rule 68 in providing incentive for the settlement of lawsuits. *Id.*

3. *Dissenting opinion.* Justice Brennan, joined by Justices Marshall and Blackmun, dissented. *Id.* at 13, 105 S. Ct. at 3018 (Brennan, J., dissenting). Justice Brennan observed that in *Roadway Express,* a similar argument was rejected as inconsistent with the well-settled meaning of the term and the desire of Congress for uniformity. *Id.* at 17, 105 S. Ct. at 3020 (citing *Roadway Express,* 447 U.S. at 758, 100 S. Ct. at 2460).

Aside from precedent, Justice Brennan offered six reasons in support of a uniform approach to the term "costs" in rule 68. *Id.* at 18–23, 105 S. Ct. at 3021–24. First, the limited history of the rule suggested that costs should be given its traditional interpretation. *Id.* at 18, 105 S.

Ct. at 3021. Second, the rules provide that costs are automatically taxed by the clerk, a category that does not comfortably include attorney fees. *Id.* at 19, 105 S. Ct. at 3022. Third, Justice Brennan suggested that the ordinary rule is that where attorney fees are included in a substantive rule, they are explicitly included. *Id.* at 20, 105 S. Ct. at 3022. Fourth, decades of practice showed that attorneys did not develop a practice of seeking to shift fees under rule 68. *Id.* Fifth, the majority interpretation produced "schizophrenic" results. *Id.* at 21, 105 S. Ct. at 3022–23 (quoting *Delta Air Lines v. August*, 450 U.S. 346, 353, 101 S. Ct. 1146, 1150 (1981)). Sixth, the drafters intended the rules to have a uniform construction and not create a senseless patchwork depending upon fine differences in language in fee statutes. *Id.* at 23, 105 S. Ct. at 3023–24.

In addition, Justice Brennan found the approach of the majority inconsistent with the goals of civil rights legislation and beyond the rulemaking power of the Court. *Id.* at 28–38, 105 S. Ct. at 3026–32.

### C. Problematic Nature of *Marek.*

1. *Developments post-*Marek*.* The *Marek* decision was immediately controversial in Congress and ultimately was overruled with respect to civil rights legislation in the Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071 (1991) (codified at 42 U.S.C. § 1988). Thus, the notion that *Marek*'s interpretation did not frustrate the underlying goals of civil rights legislation was rejected by Congress.

In 1992, Judge William Schwarzer proposed revisions to rule 68. *See* William W. Schwarzer, *Fee Shifting Offers of Judgment—An Approach to Reducing the Cost of Litigation*, 76 Judicature 147 (1992) [hereinafter Schwarzer]. Among other things, he proposed making offers of judgment available to all parties, to limit the amount of cost recovery to the amount of damages obtained by the plaintiff, and to limit recovery of costs to put

the opposing party in the same position it would have been had the offer been accepted. *Id.* at 149–50. In addition, under the Schwarzer proposal the district court was given discretion to reduce costs when necessary to avoid an undue hardship on the parties. *Id.*

In 1996, the American Bar Association weighed in on the issue. *See ABA Urges Offer of Judgment Changes to Counter Movement to "Loser Pays" Rule*, 64 U.S.L.W. 2495 (1996). The ABA concluded that the rule was deeply flawed as it was available only to plaintiffs, shifted only costs, and gave no discretion to judges if unfairness resulted. *See* Walter H. Beckham & Lawrence J. Fox, *Report on Offer of Judgment Legislation*, 1996 A.B.A. Sec. Tort & Ins. Prac. 114; *see also* Lesley S. Bonney, Robert J. Tribeck & James S. Wrona, *Rule 68: Awakening a Sleeping Giant*, 65 Geo. Wash. L. Rev. 379, 415–18 (1997) (reviewing ABA proposal); Russell C. Fagg, *Montana Offer of Judgment Rule: Let's Provide Bona Fide Settlement Incentives*, 60 Mont. L. Rev. 39, 40 n.2 (1999).

Closer to home, Drake Law Professor Danielle Shelton wrote an important article in the *Minnesota Law Review* relating to the difficulties arising from the Supreme Court's interpretation of rule 68. *See* Danielle M. Shelton, *Rewriting Rule 68: Realizing the Benefits of the Federal Settlement Rule by Injecting Certainty into Offers of Judgement*, 91 Minn. L. Rev. 865 (2007). Noting that most practitioners regard the rule as a second-class citizen, Professor Shelton wrote: "The rule's inferior citizenship is well-deserved. Due to its ambiguity, Rule 68 often creates more uncertainty, and more burdensome litigation, than it resolves." *Id.* at 867.

2. *Problems with the* Marek *approach.* The vibrant discussion about rule 68 and the *Marek* decision reveals that there are a number of problems that arise from *Marek*'s approach to the term "costs." These

difficulties apply with equal force to using the term "costs" in Iowa Code section 677.10 as a springboard for the shifting of attorney fees based on the language in the underlying fee-shifting statute.

First, the approach relies on fine distinctions in the language used in the underlying fee-shifting statutes that were not drafted with the expectation that the statutes might give rise to shifting of fees after rejected offers of judgment under Iowa Code section 677.10. Indeed, the first version of the Iowa statute dates back to an era when the statutory shifting of attorney fees was not commonplace. And, remarkably, it has taken 150 years for this court to discover that the term costs in our statutes dealing with offers of settlement now cover attorney fees.

Second, it is beyond debate that the confession of judgment antecedents to Iowa Code section 677.10 were not designed to accomplish what the majority now reads into them. Historicists tracing the statute to its legal Lake Itasca will not find much to recognize in the majority opinion. *See* Robert G. Bone, *"To Encourage Settlement": Rule 68, Offers of Judgment, and the History of the Federal Rules of Civil Procedure*, 102 Nw. U. L. Rev. 1561, 1583–97 (2008) (describing the nineteenth-century antecedents designed to address cases where a defendant admits liability but the plaintiff seeks to contest liability anyway).

Third, the parsing of the language of a fee-shifting statute is problematic. Indeed, in this case we must consider the meaning of the ambiguous phrase "taxed as costs." Instead of introducing clarity into the law, it introduces uncertainty. A much better approach is the uniform one, namely, that "costs" means traditional costs under Iowa Code section 677.10.

Fourth, the inclusion of attorney fees as costs threatens to undermine the fundamental policy of the underlying fee-shifting statute

itself. Indeed, that is exactly what happened in *Marek*. Fee-shifting statutes demonstrate a legislative directive to increase access to the courts for parties vindicating important public law principles. An interpretation of the term "costs" in a confession of judgment statute or rule eviscerates that policy.

Fifth, under Iowa Code section 677.10, it appears that the award of costs is mandatory. Ordinarily however, in the award of attorney fees, a twelve-factor test is applied to determine reasonability. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 103 S. Ct. 1933, 1937 n.3 (1983). But under Iowa Code section 677.10, there appears to be no such discretion. If so, this is quite problematic. I note that in 1983, prior to *Marek*, when the Federal Advisory Committee on the Rules of Civil Procedure was pondering the desirability of including fee-shifting in rule 68, the proposed rule would have given the court some discretion to avoid the potential "Draconian impact" of the shifting of fees. *See Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, Rules Governing Section 2254 Cases in the United States District Courts, and Rules Governing Section 2255 Proceedings in the United States District Courts*, 98 F.R.D. 337, 362–65 (1983). The mandatory nature of Iowa Code section 677.10 is appropriate when costs are considered, but goes off on steroids when attorney fees are thrown into the mix.

Sixth, the rule does not focus on nonmeritorious claims, but faulty guesswork. Under the majority approach, an offer to confess may be made early in the litigation, even before discovery has occurred. If attorney fees are included within the term "costs" in Iowa Code section 677.10, plaintiffs' lawyers will be required to make highly consequential judgments without adequate information to evaluate their case. *See* Harold S. Lewis, Jr. &

Thomas A. Easton, *Of Offers Not (Frequently) Made and (Rarely) Accepted: The Mystery of Federal Rule 68*, 57 Mercer L. Rev. 723, 735 (2006) (citing problems of early, lowball offers of settlement). Further, in many cases, it is difficult to evaluate a likely jury verdict. As Judge Schwarzer observed in connection with rule 68, "fee shifting must be approached with caution, lest it result in imposition of possibly devastating penalties against actions or defenses that could have been winners." Schwarzer, 76 Judicature at 148–49. And Justice Brennan noted that under the *Marek* approach, fees could shift "simply because [the plaintiff] guessed wrong, or because he did not have all information reasonably necessary to evaluate the offer, or because of unforeseen changes in the law or evidence after the offer." *Marek*, 473 U.S. at 37, 105 S. Ct. at 3031 (Brennan, J., dissenting). Under an approach to confessions of judgment that permits cost-shifting, a plaintiff makes a judgment akin to a gamble, even though the claim is completely meritorious.

Seventh, the approach requires plaintiffs' lawyers to predict how the district court will respond to fee requests. Of course, a plaintiffs' lawyer will have a good idea of the amount of fees that may be claimed at the time of an offer to confess judgment. But district court awards of fees are highly variable. The assessment of risk is now doubly complicated.

Eighth, an offer of a lump sum places attorneys in conflict with clients, particularly in class actions. A lump sum settlement that includes attorney fees places lawyers and clients at odds as they try to determine how to respond to a lump sum offer. In the context of a class action, a rational method of determining the allocation of an offer to confess in a short period of time may be virtually impossible.

Ninth, there is reason to believe that the inclusion of attorney fees in costs will not affect the number of settlements at all, but will only affect

the potential gains in favor of the defendants. In other words, the only effect of the inclusion of attorney fees in costs will be to shift the price range where settlement negotiations occur. *See* Judith Resnick, *Failing Faith: Adjudicatory Procedure in Decline*, 53 U. Chi. L. Rev. 494, 531 (1986) (noting that the *Marek* court "ignored the complexity of the disparate impact that the increase in economic incentives to settle has upon litigants with vastly divergent resources"); Albert Yoon & Tom Baker, *Offer-of-Judgment Rules and Civil Litigation: An Empirical Study of Automobile Insurance Litigation in the East*, 59 Vand. L. Rev. 155, 162 (2006) (discussing how the offer of judgment rule imposes risk on plaintiffs without any corresponding risk borne by defendants).

Cumulatively, in my view, these concerns are more than enough to discourage a cut and paste job implanting the approach in *Marek* into our Iowa statute. We should just declare that costs are costs and be done with it.

### IV. Application of *Marek* Leads to a Result Contrary to the Majority.

Even assuming we adopt the *Marek* approach, we must look to the fine language in the underlying fee-shifting statute to determine whether attorney fees are within the scope of the term "costs" in Iowa Code section 677.10.[9] In this case, the underlying fee statute is Iowa Code section

---

[9]Fortunately, many Iowa fee-shifting statutes clearly distinguish between attorney fees and costs and thus will not be included in the floating definition of costs in Iowa Code section 677.10. *See, e.g.*, Iowa Code § 21.6(3)(*b*) ("[A]ll costs and reasonable attorney fees . . . ."); *id.* § 22.10(3)(*c*) ("[A]ll costs and reasonable attorney fees . . . ."); *id.* § 216.15(9)(*a*)(8) ("[C]osts and reasonable attorney fees."); *id.* § 537.5203(1)(*b*) ("[T]he costs of the action together with reasonable attorney's fees as determined by the court.").

Other statutes, however, may fall within the scope of the *Marek* approach. *See, e.g.*, Iowa Code § 66.4 ("[C]osts of such removal suit, including attorney fees . . . ."). I doubt that the legislature intended any distinction among these statutes for purposes of Iowa Code section 677.10.

625.22 provides: "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court."

What are we to make of the phrase "allow and tax as a part of the costs" and the follow up phrase "to be determined by the court"? Iowa Code § 625.22. It is not a declaration that attorney fees are "part of the costs," as was perhaps arguably the case in *Marek*. What does this language mean in context?

In my view, the language is obviously designed to show how contracts with attorney fees provisions are to be enforced. The statute does not declare that attorney fees are, in fact costs. Rather, they are a distinct element that the district court is to *tax* as a *part of the costs and* awarded by the court posttrial.

The purpose of declaring that the district court may "allow and tax as a part of the costs" attorney fees is to ensure that the district court, and not the fact finder, makes the determination after trial. In a contract case, a party may wonder whether an attorney fee claim is a part of the damages that needs to be proved at trial and potentially subject to determinations by a jury. The statute answers that question. Where there is a contract that provides for attorney fees in the event of a breach, the attorney fees are not a part of the damages but instead the district court is directed to tax the attorney fees "as a part of the costs."

Indeed, as noted in a 1935 commentary, where attorney fees are available to a prevailing party, "it is usually further provided that such fees *are to be determined by the court* and *taxed as part of the costs* of the action." W.M.B, Note, *Costs—Problems in the Allowance of Attorneys' Fees in America,* 21 Va. L. Rev. 920, 921 (1935) (emphasis added) (footnote

omitted). As the commentator suggests, "[w]here a jury is required, quite obviously evidence must be introduced to guide it in fixing the amount [of attorney fees]." *Id.* at 925.

One might conclude that my approach parses the statute rather finely, or to use Justice Brennan's term, "picayune." *Marek*, 473 U.S. at 15, 105 S. Ct. at 3019 (Brennan, J., dissenting). Quite so, but that picayune distinction is precisely what *Marek* requires. If one has distaste for fine analysis of language of fee-shifting statutes, and thinks the debate about the meaning of "tax as a part of the costs" is a debate about trifles, that is a good and entirely sufficient reason to reject the *Marek* regime in its entirety.

But if we are to have it, I would conclude that Iowa Code section 625.22 does not treat attorney fees as a subset of costs, but simply declares that the district court has the power to "allow and *tax* as a part of the costs" the amount of attorney fees to be awarded *by the court*, and not a jury or fact finder, to a prevailing party.

## V. Conclusion.

For the above reasons, I respectfully dissent from the majority opinion to the extent it rejects the district court's award of postoffer attorney fees to the plaintiff and therefore shifts the attorney fees pursuant to its interpretation of the interplay of Iowa Code section 677.10 and Iowa Code section 625.22.